**UNITED STATES DISTRICT COURT**
**DISTRICT OF DELAWARE**

| | |
|---|---|
| JORDAN ROSENBLATT, Individually and On Behalf of All Others Similarly Situated, ) ) ) | |
| Plaintiff, ) | Case No. _____ |
| ) | |
| v. ) | JURY TRIAL DEMANDED |
| ) | |
| ISRAMCO, INC., HAIM TSUFF, JOSEPH ) FROM, MAX PRIDGEON, ASAF ) YARKONI, FRANS SLUITER, and NIR ) HASSON, ) ) | CLASS ACTION |
| Defendants. ) | |

## COMPLAINT FOR VIOLATION OF THE SECURITIES EXCHANGE ACT OF 1934

Plaintiff, by his undersigned attorneys, for this complaint against defendants, alleges upon personal knowledge with respect to himself, and upon information and belief based upon, *inter alia*, the investigation of counsel as to all other allegations herein, as follows:

## NATURE OF THE ACTION

1.       This action stems from a proposed transaction announced on May 20, 2019 (the "Proposed Transaction"), pursuant to which Isramco, Inc. ("Isramco" or the "Company") will be acquired by Naphtha Israel Petroleum Corporation Ltd., Naphtha Holding Ltd., I.O.C. – Israel Oil Company Ltd., and Naphtha US Oil, Inc. (collectively, "Naphtha").  Haim Tsuff ("Tsuff"), Co-Chief Executive Officer, President, and Chairman of the Board of the Company, controls Naphtha through various entities and beneficially owns approximately 73% of the outstanding common stock of Isramco.

2.       On May 20, 2019, Isramco's Board of Directors (the "Board" or "Individual Defendants") caused the Company to enter into an agreement and plan of merger (the "Merger Agreement") with Naphtha.  Pursuant to the terms of the Merger Agreement, Isramco's

stockholders will receive $121.40 in cash for each share of Isramco common stock they own.

3.      On September 6, 2019, defendants filed a proxy statement (the "Proxy Statement") with the United States Securities and Exchange Commission (the "SEC") in connection with the Proposed Transaction, which scheduled a stockholder vote on the Proposed Transaction for October 22, 2019.

4.      The Proxy Statement omits material information with respect to the Proposed Transaction, which renders the Proxy Statement false and misleading.   Accordingly, plaintiff alleges herein that defendants violated Sections 14(a) and 20(a) of the Securities Exchange Act of 1934 (the "1934 Act") in connection with the Proxy Statement.

## JURISDICTION AND VENUE

5.      This Court has jurisdiction over the claims asserted herein pursuant to Section 27 of the 1934 Act because the claims asserted herein arise under Sections 14(a) and 20(a) of the 1934 Act and Rule 14a-9.

6.      This Court has jurisdiction over defendants because each defendant is either a corporation that conducts business in and maintains operations within this District, or is an individual with sufficient minimum contacts with this District so as to make the exercise of jurisdiction by this Court permissible under traditional notions of fair play and substantial justice.

7.      Venue is proper under 28 U.S.C. § 1391(b) because a substantial portion of the transactions and wrongs complained of herein occurred in this District.

## PARTIES

8.      Plaintiff is, and has been continuously throughout all times relevant hereto, the owner of Isramco common stock.

9.     Defendant Isramco is a Delaware corporation and maintains its principal executive offices at 1001 West Loop South, Suite 750, Houston, Texas 77027.  Isramco's common stock is traded on the NASDAQ Capital Market under the ticker symbol "ISRL."

10.    Defendant Tsuff is Co-Chief Executive Officer, President, and Chairman of the Board of the Company.  Tsuff controls Naphtha through various entities and beneficially owns approximately 73.0% of the outstanding common stock of Isramco.

11.    Defendant Joseph From is a director of the Company.

12.    Defendant Max Pridgeon ("Pridgeon") is a director of the Company.  Pridgeon is a member of the so-called special committee of the Board (the "Special Committee").

13.    Defendant Asaf Yarkoni ("Yarkoni") is a director of the Company.  Yarkoni is a member of the Special Committee.

14.    Defendant Frans Sluiter is a director of the Company.

15.    Defendant Nir Hasson ("Hasson") is a director of the Company.  Hasson is a member of the Special Committee.

16.    The defendants identified in paragraphs 10 through 15 are collectively referred to herein as the "Individual Defendants."

## CLASS ACTION ALLEGATIONS

17.    Plaintiff brings this action as a class action on behalf of himself and the other public stockholders of Isramco (the "Class").  Excluded from the Class are defendants herein and any person, firm, trust, corporation, or other entity related to or affiliated with any defendant.

18.    This action is properly maintainable as a class action.

19.    The Class is so numerous that joinder of all members is impracticable.  As of May 16, 2019, there were approximately 2,717,648 shares of Isramco common stock outstanding, held

by hundreds, if not thousands, of individuals and entities scattered throughout the country.

20.     Questions of law and fact are common to the Class, including, among others, whether defendants will irreparably harm plaintiff and the other members of the Class if defendants' conduct complained of herein continues.

21.     Plaintiff is committed to prosecuting this action and has retained competent counsel experienced in litigation of this nature.  Plaintiff's claims are typical of the claims of the other members of the Class and plaintiff has the same interests as the other members of the Class. Accordingly, plaintiff is an adequate representative of the Class and will fairly and adequately protect the interests of the Class.

22.     The prosecution of separate actions by individual members of the Class would create the risk of inconsistent or varying adjudications that would establish incompatible standards of conduct for defendants, or adjudications that would, as a practical matter, be dispositive of the interests of individual members of the Class who are not parties to the adjudications or would substantially impair or impede those non-party Class members' ability to protect their interests.

23.     Defendants have acted, or refused to act, on grounds generally applicable to the Class as a whole, and are causing injury to the entire Class.  Therefore, final injunctive relief on behalf of the Class is appropriate.

## SUBSTANTIVE ALLEGATIONS

### *Background of the Company and the Proposed Transaction*

24.     Isramco is an independent oil and natural gas company engaged in the exploration, development, and production of oil and natural gas properties located onshore in the United States and ownership of various royalty interests in oil and gas concessions located offshore Israel.

25.     The Company operates a well service company that provides well maintenance, workover services, well completion, and recompletion services.

26.     The Company also operates a production services company that provides a full range of onshore production services to United States oil and gas producers and a transportation company providing transport of liquefied petroleum products.

27.     On May 20, 2019, Isramco's Board caused the Company to enter into the Merger Agreement with Naphtha.  Individual Defendant Tsuff controls Naphtha through various entities and beneficially owns approximately 73.0% of the outstanding common stock of Isramco.

28.     Pursuant to the terms of the Merger Agreement, Isramco's stockholders will receive $121.40 in cash for each share of Isramco common stock they own.

29.     According to the press release announcing the Proposed Transaction:

Isramco, Inc. (NASDAQ CM: ISRL) (the "Company," "Isramco," "we" or "our") announced today that it has signed a definitive merger agreement with Naphtha Israel Petroleum Corporation Ltd. ("Naphtha"), Naphtha Holding Ltd. ("NHL"), I.O.C. – Israel Oil Company, LTD. ("IOC") and Naphtha US Oil, Inc. (each a wholly owned subsidiary of Naphtha, and, together with Naphtha, the "Naphtha Group"), pursuant to which the Naphtha Group will acquire all of the common stock of Isramco issued and outstanding immediately prior to the effective time of the merger. The holders of the Company's outstanding shares of common stock will receive US $121.40 per share in cash, other than (i) the shares owned by NHL or IOC, (ii) the shares held by Isramco as treasury stock and (iii) the shares in respect of which appraisal rights have been properly and validly exercised under Delaware law.

The US $121.40 per share price represents a premium of approximately 10% over the US $110.36 purchase price per share initially offered by Naphtha and a premium of approximately 4.4% over the 30 trading-day average price of the Company's common stock as of May 17, 2019. Mr. Haim Tsuff, who through various entities controls Naphtha, beneficially owns approximately 73.0% of the outstanding common stock of Isramco.

The Company's Board of Directors, acting on the unanimous recommendation of the special committee formed by the Board of Directors (the "Special Committee"), approved the merger agreement and the transactions contemplated by the merger agreement and resolved to recommend that the Company's stockholders adopt the

merger agreement and the transactions contemplated by the merger agreement. The Special Committee, which is comprised solely of independent and disinterested directors of the Company who are unaffiliated with the Naphtha Group or management of the Company, exclusively negotiated the terms of the merger agreement with the Naphtha Group, with the assistance of its independent financial and legal advisors.

Upon closing of the merger, Isramco will become an indirect wholly owned subsidiary of Naphtha. Isramco is expected to remain headquartered in Houston, Texas. The merger is subject to approval by Isramco's stockholders, including a non-waivable condition requiring approval by the holders of a majority of the outstanding shares of Isramco common stock that are not beneficially owned by the members of the Naphtha Group or certain senior executive officers of the Company, as well as certain other customary closing conditions. The merger is not subject to a financing condition. The Company will call a meeting of stockholders for the purpose of voting on the adoption of the merger agreement in due course. If completed, the merger will result in the Company becoming a privately held company and Isramco's common stock would no longer be listed on the NASDAQ Capital Market.

Duff & Phelps, LLC is serving as sole financial advisor to the Special Committee and Norton Rose Fulbright US LLP is serving as legal counsel to the Special Committee. Baker Botts L.L.P. is serving as U.S. legal counsel to the Naphtha Group.

30.     The Merger Agreement contains a "no solicitation" provision that prohibits the Individual Defendants from soliciting alternative proposals.   Section 6.3(a) of the Merger Agreement provides:

Subject to the provisions of this Section 6.3, and except for actions or omissions taken by or at the direction of any Purchaser Party, including in such person's capacity as a director, officer or employee of any of the Acquired Companies, during the Pre-Closing Period, the Company and the other Acquired Companies shall not, and the Company and the other Acquired Companies shall instruct and cause their respective Representatives not to, directly or indirectly:

(i) solicit or initiate, or knowingly facilitate or knowingly encourage the submission of any Acquisition Proposal;

(ii) furnish any nonpublic information regarding or afford access to the properties, books or records of any of the Acquired Companies to any Person for the purpose of knowingly facilitating or knowingly encouraging an Acquisition Proposal;

(iii) engage in discussions or negotiations with any Person for the purpose of knowingly facilitating or knowingly encouraging any Acquisition Proposal;

(iv) approve, endorse, recommend or enter into any agreement in principle, letter of intent, merger agreement, acquisition agreement or other similar agreement relating to any Acquisition Proposal (other than an Acceptable Confidentiality Agreement entered into in accordance with Section 6.3(b)); or

(v) resolve to propose, agree or publicly announce an intention to do any of the foregoing.

31.     Additionally, the Company must promptly advise Naphtha of any proposals or inquiries received from other parties.  Section 6.3(c) of the Merger Agreement states:

 At any time prior to the receipt of the later of the Company Stockholder Approval and the Majority of the Minority Approval, the Company shall promptly (an in no event later than 24 hours after receipt of such Acquisition Proposal) advise Parent orally and in writing of the receipt by the Company of any Acquisition Proposal or any inquiry that could reasonably be expected to lead to an Acquisition Proposal (including the identity of the Person or group of Persons making or submitting such Acquisition Proposal, and details of the material terms and conditions thereof). The Company shall keep Parent promptly (and in no event later than 24 hours after receipt by the Company) and reasonably informed with respect to (i) the status of any such Acquisition Proposal and (ii) the status, any material developments and terms of any material modification thereto. The Company agrees that it will not enter into any agreement with any Person subsequent to the date hereof that prohibits the Company from providing any information or materials to Parent in accordance with, or otherwise complying with this Section 6.3(c).

32.     Moreover, the Merger Agreement contains a highly restrictive "fiduciary out" provision permitting the Board to change its recommendation of the Proposed Transaction under extremely limited circumstances, and grants Naphtha a "matching right" with respect to any "Superior Proposal" made to the Company.  Section 6.3(e) of the Merger Agreement provides:

During the Pre-Closing Period, neither the Company nor the Board (in accordance with Section 9.14) nor any committee thereof shall (i) withhold, withdraw, amend, qualify or modify, in a manner adverse to the Purchaser Parties, the Company Recommendation, (ii) adopt, approve or recommend any Acquisition Proposal, (iii) fail to include the Company Recommendation in the Proxy Statement or fail to recommend against any Acquisition Proposal subject to Regulation 14D under the Exchange Act in any solicitation or recommendation statement on Schedule 14D-9 as promptly as practicable after the commencement of such Acquisition Proposal

(but in any event within 10 Business Days following such commencement), (iv) following receipt of an Acquisition Proposal, fail to reaffirm its approval or recommendation of this Agreement and the Merger within 10 Business Days after receipt of any reasonable request to do so from Parent or (v) resolve or agree to take any of the foregoing actions (any of the actions or events described in clauses (i) through (v), a "Change in Recommendation"). Notwithstanding anything in this Agreement to the contrary, at any time prior to the receipt of the later of the Company Stockholder Approval and the Majority of the Minority Approval, if (A) in response to an Intervening Event, the Board or any Independent Committee determines in good faith, after consultation with its outside legal counsel, that the failure to take such action would be inconsistent with its fiduciary duties under applicable Law or (B) in response to the receipt by the Company of an unsolicited Acquisition Proposal, the Board or any Independent Committee determines in good faith, after consultation with its financial advisor and outside legal counsel, that such Acquisition Proposal constitutes a Superior Proposal and that the failure to take such action would be inconsistent with its fiduciary duties under applicable Law, the Board or any Independent Committee may make a Change in Recommendation in respect of such Intervening Event or such Superior Proposal, as the case may be. The Board or any Independent Committee may make a Change in Recommendation only if (i) the Board or any Independent Committee has notified Parent in writing of its intent to take such action (any such notice, a "Change in Recommendation Notice"), which notice shall be provided at least five Business Days in advance of such action (and the Purchaser Parties shall keep the contents of such Change in Recommendation Notice confidential until such Change in Recommendation is made public by the Company) and, if delivered in connection with a (A) Superior Proposal, contain the identity of the Person making the Superior Proposal, specify the material terms of the Superior Proposal and contain a copy of the material documents or agreements providing for the Superior Proposal or (B) Intervening Event, contain a reasonably detailed description of such Intervening Event; provided, that it is agreed that the provision of such Change in Recommendation Notice to Parent, in each case, shall not constitute a Change in Recommendation; (ii) if requested by Parent, the Company shall, and shall cause its Representatives to, for a period of at least four Business Days following receipt by Parent of the Change in Recommendation Notice (such time period, the "Notice Period"), negotiate with Parent and any Representative of Parent in good faith (to the extent Parent desires to negotiate) to permit Parent to propose amendments to the terms and conditions of this Agreement and the Contemplated Transactions (a "Parent Proposal"); (iii) following the Notice Period, and taking into account any Parent Proposal received during the Notice Period, the Board or any Independent Committee shall have considered in good faith such Parent Proposal, if any, and shall have determined, in respect of such Superior Proposal, that the Superior Proposal would continue to constitute a Superior Proposal or, in respect of such Intervening Event, the failure to make a Change in Recommendation with respect to such Intervening Event would be inconsistent with its fiduciary duties under applicable Law, if the revisions proposed in such Parent Proposal, if any, were to be given effect; and (iv) such Superior Proposal did not result from a material

breach of this Section 6.3 (other than any such breach caused by any Purchaser Party). The Company acknowledges and agrees that, in connection with a Change in Recommendation Notice delivered in connection with an Acquisition Proposal that is determined to be a Superior Proposal, each successive material modification to the financial terms of such Acquisition Proposal shall be deemed to constitute a new Acquisition Proposal for purposes of this Section 6.3(e) and shall trigger a new Notice Period, except that the Notice Period shall be at least three Business Days (instead of four Business Days otherwise contemplated by clause (ii) above).

33.    The Merger Agreement also provides for a "termination fee" of $1.5 million payable by the Company to Naphtha if the Individual Defendants cause the Company to terminate the Merger Agreement.

***The Proxy Statement Omits Material Information, Rendering It False and Misleading***

34.    Defendants filed the Proxy Statement with the SEC in connection with the Proposed Transaction, which scheduled a stockholder vote on the Proposed Transaction for October 22, 2019.

35.    As set forth below, the Proxy Statement omits material information with respect to the Proposed Transaction, which renders the Proxy Statement false and misleading.

36.    The Proxy Statement fails to disclose the "uncertainties" that the Special Committee's financial advisor, Duff & Phelps, LLC ("Duff & Phelps"), conveyed to the Special Committee on January 10, 2019.

37.    The Proxy Statement fails to disclose the nature of the Special Committee's discussions regarding the Company's financial projections, including those that took place on January 29, 2019 and February 17, 2019.

38.    The Proxy Statement fails to disclose Naphtha's April 3, 2019 presentation to the Special Committee.

39.    The Proxy Statement fails to disclose Duff & Phelps' April 3, 2019 presentation to Naphtha.

40.     The Proxy Statement fails to disclose the timing and nature of all communications regarding (i) the future employment and directorship of the Company's officers and directors and (ii) the fees to be paid to the members of the Special Committee, including who participated in all such communications.

41.     The omission of the above-referenced material information renders the Proxy Statement false and misleading, including, *inter alia*, the following sections of the Proxy Statement: (i) Background of the Merger; and (ii) Reasons for the Merger; Recommendation of the Special Committee; Recommendation of the Board; Fairness of the Merger.

42.     The above-referenced omitted information, if disclosed, would significantly alter the total mix of information available to the Company's stockholders.

## COUNT I

**Claim for Violation of Section 14(a) of the 1934 Act and Rule 14a-9 Promulgated Thereunder Against the Individual Defendants and Isramco**

43.     Plaintiff repeats and realleges the preceding allegations as if fully set forth herein.

44.     The Individual Defendants disseminated the false and misleading Proxy Statement, which contained statements that, in violation of Section 14(a) of the 1934 Act and Rule 14a-9, in light of the circumstances under which they were made, omitted to state material facts necessary to make the statements therein not materially false or misleading.  Isramco is liable as the issuer of these statements.

45.     The Proxy Statement was prepared, reviewed, and/or disseminated by the Individual Defendants.  By virtue of their positions within the Company, the Individual Defendants were aware of this information and their duty to disclose this information in the Proxy Statement.

46.     The Individual Defendants were at least negligent in filing the Proxy Statement with these materially false and misleading statements.

47.     The omissions and false and misleading statements in the Proxy Statement are material in that a reasonable stockholder will consider them important in deciding how to vote on the Proposed Transaction.   In addition, a reasonable investor will view a full and accurate disclosure as significantly altering the total mix of information made available in the Proxy Statement and in other information reasonably available to stockholders.

48.     The Proxy Statement is an essential link in causing plaintiff and the Company's stockholders to approve the Proposed Transaction.

49.     By reason of the foregoing, defendants violated Section 14(a) of the 1934 Act and Rule 14a-9 promulgated thereunder.

50.     Because of the false and misleading statements in the Proxy Statement, plaintiff and the Class are threatened with irreparable harm.

## COUNT II

### Claim for Violation of Section 20(a) of the 1934 Act
### Against the Individual Defendants

51.     Plaintiff repeats and realleges the preceding allegations as if fully set forth herein.

52.     The Individual Defendants acted as controlling persons of Isramco within the meaning of Section 20(a) of the 1934 Act as alleged herein.  By virtue of their positions as officers and/or directors of Isramco and participation in and/or awareness of the Company's operations and/or intimate knowledge of the false statements contained in the Proxy Statement, they had the power to influence and control and did influence and control, directly or indirectly, the decision making of the Company, including the content and dissemination of the various statements that plaintiff contends are false and misleading.

53.     Each of the Individual Defendants was provided with or had unlimited access to copies of the Proxy Statement alleged by plaintiff to be misleading prior to and/or shortly after

these statements were issued and had the ability to prevent the issuance of the statements or cause them to be corrected.

54.     In particular, each of the Individual Defendants had direct and supervisory involvement in the day-to-day operations of the Company, and, therefore, is presumed to have had the power to control and influence the particular transactions giving rise to the violations as alleged herein, and exercised the same.  The Proxy Statement contains the unanimous recommendation of the Individual Defendants to approve the Proposed Transaction.  They were thus directly involved in the making of the Proxy Statement.

55.     By virtue of the foregoing, the Individual Defendants violated Section 20(a) of the 1934 Act.

56.     As set forth above, the Individual Defendants had the ability to exercise control over and did control a person or persons who have each violated Section 14(a) of the 1934 Act and Rule 14a-9, by their acts and omissions as alleged herein.  By virtue of their positions as controlling persons, these defendants are liable pursuant to Section 20(a) of the 1934 Act.  As a direct and proximate result of defendants' conduct, plaintiff and the Class are threatened with irreparable harm.

## **PRAYER FOR RELIEF**

**WHEREFORE**, plaintiff prays for judgment and relief as follows:

A.     Preliminarily and permanently enjoining defendants and all persons acting in concert with them from proceeding with, consummating, or closing the Proposed Transaction;

B.     In the event defendants consummate the Proposed Transaction, rescinding it and setting it aside or awarding rescissory damages;

C.      Directing the Individual Defendants to disseminate a Proxy Statement that does not contain any untrue statements of material fact and that states all material facts required in it or necessary to make the statements contained therein not misleading;

D.      Declaring that defendants violated Sections 14(a) and/or 20(a) of the 1934 Act, as well as Rule 14a-9 promulgated thereunder;

E.      Awarding plaintiff the costs of this action, including reasonable allowance for plaintiff's attorneys' and experts' fees; and

F.      Granting such other and further relief as this Court may deem just and proper.

## JURY DEMAND

Plaintiff hereby requests a trial by jury on all issues so triable.

Dated: September 20, 2019

**RIGRODSKY & LONG, P.A.**

By:   */s/ Gina M. Serra*
      Seth D. Rigrodsky (#3147)
      Brian D. Long (#4347)
      Gina M. Serra (#5387)
      300 Delaware Avenue, Suite 1220
      Wilmington, DE 19801

**OF COUNSEL:**
      Telephone: (302) 295-5310

**RM LAW, P.C.**
      Facsimile: (302) 654-7530
Richard A. Maniskas
      Email: sdr@rl-legal.com
1055 Westlakes Drive, Suite 300
      Email: bdl@rl-legal.com
Berwyn, PA 19312
      Email: gms@rl-legal.com
Telephone: (484) 324-6800
Facsimile: (484) 631-1305
Email: rm@maniskas.com
      *Attorneys for Plaintiff*